**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOSE NUMA                                    CIVIL ACTION

VERSUS                                       NO. 13-515

LEON CANNIZZARO ET. AL                       SECTION: "B"(4)

<u>ORDER AND REASONS</u>

<u>Nature of Motion and Relief Sought</u>:

Before the Court are Defendant New Orleans City's (the "City") Motion to Dismiss and for a More Definite Statement (Rec. Doc. 52) and Defendants Leon A. Cannizzaro, Graymond Martin, Cheri Huffman, and Orleans Parish District Attorney's Office's (collectively the "DA Defendants") Joint Motion to Dismiss (Rec. Doc. 53). Plaintiff Josie Numa ("Numa" or "Plaintiff") filed a single memorandum in opposition to both motions. (Rec. Doc. 54).

**IT IS ORDERED** that the DA Defendants' Motion to Dismiss (Rec. Doc. 53) is **GRANTED in part and DENIED in part**:

(i)    Numa's Section 1983 claims are **DISMISSED as to all Defendants  to the extent** they seek recovery for actions prior to Numa's March 19, 2012 termination,

(ii)   Numa's Section 1983 claims against Leon Cannizzaro are **DISMISSED entirely as to Leon Cannizzaro in his individual capacity**,

(ii)   the Motion is **DENIED without prejudice to reurge after**

> **close of discovery to the extent it seeks dismissal of Numa's Title VII claims against Cannizzaro in his official capacity and to the extent it seeks dismissal of 1983 claims against Cheri Huffman and Graymond Martin.**

**IT IS FURTHER ORDERED** that the City's Motion to Dismiss (Rec. Doc. 52) is **GRANTED** and Numa's claims against the City are **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that the remaining defendants shall file a motion to dismiss on qualified immunity grounds **with a complete rather than cursory analysis** **no later than Friday April 18th, 2014**.

Procedural History and Facts of the Case:

This case arises from allegations of racial discrimination within the Orleans Parish District Attorney's Office (the "DA's Office"). Plaintiff worked as an attorney in that office from February of 2007 to December of 2011. (Rec. Doc. 18, Second Amended Complaint ("SAC" hereinafter) at 3, 9). In June of 2010 she was transferred to the Child Support Enforcement Division, where the alleged discrimination began. (SAC at 4).

Numa seeks redress for both discrete discriminatory acts and a hostile environment, although her Complaint does not make clear which discrete acts she considers actionable and which merely underlie her hostile environment claims. The first act described in the SAC took place in October of 2010, when her coworker, non-party Melissa Cullotta, interrupted her while she was speaking

2

in court and announced that Numa "speaks too fast" such that "nobody can understand her with that accent." *Id.* Both Numa and another co-worker "documented" the incident in letters addressed to Defendant Cherie Huffman ("Huffman"), Numa's supervisor, and Defendant Leon Cannizzaro ("Cannizzaro"), the New Orleans Parish District Attorney. *Id.* In response, Huffman told Numa that Cullotta "was only trying to help." *Id.*

Numa further alleges that in November of 2010 Huffman called a meeting of all Child Support Enforcement Division attorneys in which she "direct[ed] her attention to the black ADA's present [and] announced that these attorneys needed to 'get along with' Melissa Cullotta." *Id.* at 4-5. During that meeting Huffman also allegedly told each black attorney present that their performances "needed improvement" and told each non-black attorney that their performances were "satisfactory." *Id.* at 5.[1]

Numa also alleges that her work was reviewed by non-attorney support staff, that such reviews were incorporated into Huffman's official performance evaluations, and that such non-attorney reviews were imposed only on black attorneys working within the Child Support Division. *Id.* Numa alleges that she complained to Huffman of such practices, which went unanswered, and that she consequently filed an internal complaint with Cannizzaro

---

[1] Numa's SAC actual states that "non-white" attorneys were told their performances were satisfactory. *Id.* this is clearly a typographical error and the Court accordingly reads the complaint as stated above. *Id.*

concerning the same on January 7, 2011. *Id.* at 5-6.

Several weeks later, Numa requested transfer from the Child Support Division, which Huffman denied. *Id.* at 6. According to Numa, identical requests were granted to white attorneys during her time there. *Id.*

In response to Numa's January 7 complaint, the DA's Office opened an internal investigation and commissioned the law firm of Charbonnet & Charbonnet to act as "Special Counsel" for the investigation. *Id.* Internally, the investigation was "directed" by Defendant Graymond Martin ("Martin"), First Assistant District Attorney for Orleans Parish. *Id.*[2] On April 6, 2011, Martin informed Numa that the internal investigation uncovered "no pattern of racial discrimination but found that a 'personality conflict' existed between [Numa] and another ADA." *Id.* at 7. Numa challenges those findings and portrays the investigation as a sham, asserting that all but one of the black ADA's interviewed for the investigation alleged that Huffman singled out black attorneys for ridicule, allowed non-attorneys "*de facto* authority" over black attorneys, and demoted or fired black attorneys rather than allow them to transfer, as she did for white attorneys. *Id.*

Numa then filed her first EEOC complaint on April 25, 2011,

---

[2]According to Numa, Huffman announced at sometime during this investigation that no one "could ever get her for racial discrimination, because she fired a white attorney," a claim that Numa alleges is false. *Id.* at 6-7.

alleging discrimination on the basis of race. *Id.* On the same date she sent a letter to the Department of Justice, complaining of the same. *Id.* In the ensuing months, she sent a similar letter to the NAACP and submitted internal complaints against legal certain legal assistants. *Id.*

Finally, on December 11, 2011, Numa alleges that Huffman verbally gave her a satisfactory performance evaluation but that "the written evaluation did not align with [that] assessment." *Id.* at 9. Numa "responded" to that written evaluation, complaining that her evaluation was improperly and unethically based on opinions of non-attorneys. *Id.* Several months later she received a termination letter stating that she had been "laid off." *Id.* Thereafter, on June 9, 2012, she filed a second EEOC complaint, alleging retaliation for filing her first EEOC complaint and for speaking out against Huffman's conduct. On December 18, 2012, the EEOC sent Numa a right to sue letter, which she received on December 21, 2012. *Id.* at 10.

On these grounds Numa brings Title VII claims for "race-based discrimination/harassment, hostile work environment, and retaliatory discharge" against Cannizzaro in his official capacity and section 1983 claims premised on 42 U.S.C. section 1981 and the Equal Protection Clause against Cannizzaro, Huffman, and Martin in

their individual capacities (Rec. Doc. 54-1 at 3).[3]

<u>Law and Analysis</u>

A. <u>Standard of Review</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must include in her complaint "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering whether claims should be dismissed, the court must accept the factual allegations of the complaint as true and resolve all ambiguities and doubts regarding the sufficiency of the claim in favor of the plaintiff. *Twombly*, 550 U.S. at 555. A claim should not be dismissed unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *McLain v. Real Estate Bd. of New*

---

[3] Numa's Complaint is somewhat ambiguous as to which claims she asserts against each of the DA Defendants. Thus, the DA Defendants reasonably read the SAC as asserting Title VII, section 1983, and section 1981 claims against each Individual Defendant in their individual and official capacities. (Rec. Doc. 53-1 at 1). They also read the Complaint as asserting similar claims against the DA's Office itself. *Id.* Accordingly, the DA Defendants move and argue for dismissal of Title VII claims against the Individual Defendants in their individual capacities, all claims against the DA's Office, and all other claims against Huffman and Martin in their official capacities. *Id.* at 4-22. The Court need not and does not address the doubtful merits of those perceived claims, however, because Numa has effectively waived them by clarifying in her memorandum that she only asserts the above-listed claims. (Rec. Doc. 54-1 at 1, 3).

*Orleans, Inc.*, 444 U.S. 232, 246 (1980) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, if the complaint contains only "conclusory allegations and unwarranted deductions of fact," dismissal is warranted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

B. Title VII Claims

Title VII prohibits employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2 *et seq*. Courts have recognized discrete types of actionable Title VII claims, three of which Numa appears to assert here: disparate treatment claims, hostile environment claims, and retaliation claims. *See*, *e.g.*, *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)(discussing the parameters for timeliness of each type of claim). The DA Defendants contend that Numa has failed to state a claim under Title VII under each theory, that her claims are premature, and that her claims are time-barred. Each contention is without merit as discussed below.

**1. Timeliness of EEOC Charges**

Plaintiff's asserting Title VII claims must first submit a "charge" with the EEOC "within 180 days after the alleged unlawful employment practice occurred." *Morgan*, 536 U.S. at 109 (quoting 42 U.S.C. § 2000e-5(e)(1)). Timely filing such a charge is not a jurisdictional prerequisite, but "a precondition to filing suit in district court." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th

Cir. 1996).

Whether this precondition is met and a whether Title VII claim is thereby timely filed turns on the type of unlawful employment practiced alleged. Where plaintiffs seek redress for discrete discriminatory acts, "such as termination, failure to promote, [or] denial of transfer," they must first file a charge within 180 days of such act for the claims to be actionable. *Morgan*, 536 U.S. at 114-15.

Hostile environment claims, which are "different in kind from discrete acts," *id.* at 115, are subject to the looser timeliness constraints under the "continuing violation" doctrine. *Stewart v. Mississippi Transp. Com'n,*, 586 F.3d 321, 238 (2009)(citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Under that doctrine, a hostile environment claim is timely so long as it brought within 180 days of any act contributing to that claim. *Id.*

The continuing violation doctrine does not, however, allow courts to consider *all* acts outside of the 180 time period. Only "related" acts may combine to substantiate or make timely hostile environment claims. *Stewart*, 586 F.3d at 238 (holding that "pre-and post-limitations period incidents involv[ing] the same type of harassment . . . perpetrated by the same manager" are sufficiently related). Moreover, separate acts do not constitute a continuing violation if they are separated by an intervening and prompt

8

remedial action by the employer. *Id.* at 329. Finally, the court's equitable powers may "temper" the continuing violation doctrine to "honor Title VII's remedial purpose without negating the particular purpose of the [EEOC] filing requirement." *Id.* at 328 (citations and quotations omitted).

Here, Numa filed a two separate EEOC charges, one on April 25, 2011 and another on June 19, 2012. Neither the SAC nor Numa's memoranda specify which discrete actions Numa considers individually actionable. The Court reads her complaint as asserting a disparate treatment claim for (i) denial of her January 7, 2011 transfer request, (ii) her performance review on December 20, 2011 and (iii) her termination. In each instance Numa filed a charge for discrimination on the basis of race within 180 days of the alleged discrete act. Her April 2011 charge was filed within 180 days of her transfer request, which was subsequently denied, and both her performance review and termination occurred within 180 days from June 2012 charge. Her allegations of discrete discriminatory actions were therefore timely.

Numa's Complaint also fails to specify which acts underlie her hostile environment claim. It is nevertheless clear that this claim was also timely, as each of those acts fall within 180 days of at least one EEOC charge and each was allegedly committed or orchestrated by the same supervisor, Huffman. The Court does not find that the internal investigation was an intervening act for the

purposes of timeliness in light of the fact that the Defendants have not argued this is the case and in light of the SAC's characterization of the investigation.

The DA Defendants contend that all of Numa's claims are time-barred except those premised on events occurring within the 180 days before he June 12, 2012 EEOC filing. *Id.* at 12. Thus, the Defendants contend that Numa's only claims not time-barred are those premised on her March 2012 termination. *Id.* This argument, however, plainly ignores the distinction between hostile environment and discrete act claims and the fact that Numa filed a separate, initial EEOC charge on April 25, 2011, and for those reasons is without merit.

Accordingly, Numa's Title VII claims are not time-barred for failure to file charges with the EEOC.

**2. Exhaustion of Administrative Remedies & Timeliness of Suit**

Plaintiffs asserting discrimination claims under Title VII must first exhaust administrative remedies before filing suit in federal court. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (2002). Exhaustion occurs when a plaintiff (i) files a timely charge with the EEOC and (ii) receives a "right to sue" letter from that agency. *Id.* at 379. To be timely filed, Title VII suits must be filed within 90 days of receipt of right to sue letters. *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982)(citing 42 U.S.C. § 2000e-5(f)(1)). While the timeliness

requirement is strictly construed, *Taylor*, 296 F.3d at 379, the substantive scope of a judicial complaint is identical to the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)(quotations omitted); *see also Kirkland v. Buffalo Bd. of Ed.*, 622 F.2d 1066, 1068 (2d Cir. 1980)(while a right to sue letter does not constitute "an open license to litigate any claim of discrimination against an employer," it does allow judicial consideration of claims "reasonably related to the allegations in the complaint filed with the EEOC.")

Here, Numa's allegations are sufficient to survive dismissal on these grounds. She alleges that she filed two charges with the EEOC, the first in April of 2011, alleging discrimination on the basis of race, and the second in June of 2012, alleging retaliatory discharge. (SAC at 2, 10). She further claims that she received a single right to sue letter on December 21, 2012, in response to both claims. (SAC at 10, Rec. Doc. 54-1 at 7). Her suit is thus timely, because she initiated this suit 89 days later on March 19, 2013, one day shy of the 90 day deadline.

The DA Defendants contend that Numa has not exhausted her remedies because she did not receive an EEOC right to sue letter explicitly responsive to her January 2011 charge. *Id.* at 7. This contention rests entirely fact that Numa's right to sue letter is

assigned number 451-**2012**-965. *Id.* at 6. In the alternative, the DA
Defendants also contend that if Numa received a right to sue letter
separate from the 451-2012-965 letter, her claims premised on her
April 2011 charge are untimely. *Id.* at 7. These contentions
overlook that actionable Title VII claims may be based "not only
upon the specific complaints made by the employee's . . . EEOC
charge, but also upon any kind of discrimination like or related to
the charge's allegations, limited only by the scope of the EEOC
investigation that could reasonably be expected to grow out of the
initial charges discrimination." *Fellows v. Universal Restaurants,
Inc.*, 701 F.3d 447, 450 (5th Cir. 1983).

In short, Numa's allegations concerning her pre-suit actions
establish that she exhausted administrative remedies and timely
filed suit in this Court.

**3. Failure to State a Claim**

As noted above, Courts recognize several types of "status-
based discrimination claims" under Title VII. As relevant here,
plaintiffs may assert "disparate treatment" claims under 42 U.S.C.
§ 2000e-2(a) and (k), "retaliation" claims under 42 U.S.C. § 2000e-
3, and hostile environment claims as recognized in *Harris v.
Forklift Systems*, *Inc.*, 510 U.S. 17 (1993). *See*, *e.g.*, *Barnes v.
McHugh*, CIV.A. 12-2491, 2013 WL 3561679 (E.D. La. 2013)(listing
categories of claims). Numa expressly asserts hostile environment
and retaliation claims, but her SAC and briefs remain ambiguous as

to which discrete actions underlie her disparate treatment claims. As noted above, the Court reads her complaint as asserting disparate treatment claims for (i) denial of her January 2011 transfer request, (ii) her performance review on December 20, 2011 and (iii) her termination. If Numa intends to assert disparate treatment claims for other acts alleged in her SAC, she must **seek leave to amend** and thereby clarify her claims **NO LATER THAN April 11, 2014**. She is advised however, that she will not be granted leave to assert additional facts, a task for which she has already had ample opportunity.

The DA Defendants contend that Numa has failed to state a claim under any theory. (Rec. Doc. 53-1 at 7-11). With respect to her hostile environment claim, they contend that the facts alleged are not sufficiently severe or pervasive to alter the conditions of her employment. *Id.* at 7-9. With respect to her retaliation claim, the Defendants contend that she has not sufficiently alleged participation in "protected activity." *Id.* at 10. As to her disparate treatment claim, they contend that she only alleges one adverse employment action (discharge) and fails to allege that similarly situated people of a different class were not subject to the same. *Id.* at 11.

While a plaintiff must establish a prima facie case on motion for summary judgment, at the motion to dismiss stage a plaintiff need only provide a short and plain statement of the claim that

shows she is entitled to relief. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (holding that imposing a prima facie requirement during the pleadings stage is inappropriate); *see also Raj v. Louisiana State Univ., 714 F.3d 322, 331 (5th Cir. 2013)*("Inasmuch as the district court required Raj to make a showing of each prong of the prima facie test for disparate treatment at the pleading stage, the district court erred by improperly substituting an evidentiary standard for a pleading requirement.")(citation and quotations omitted). In *Swierkiewicz*, the Court explained that because "the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." 534 U.S. at 512. Of course, while Numa need not prove each element of her claims at this stage, her "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This inquiry "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that her claims are merited. Id. at 556.

To state a hostile work environment claim under Title VII a plaintiff must allege facts sufficient to show that the work environment "was sufficiently severe or pervasive to alter the conditions of her employment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Further, a prima facie case requires a plaintiff to show that "more than just a few isolated incidents of

racial enmity" occurred. *Roberts v. Tex. Dept. of Human Servs.*, No. 00-41335, WL1468757, at *2 (5th Cir. 2001). Occasional racial comments do not rise to the level of severe or pervasive harassment. *Id.* "It is only a violation of Title VII when the workplace is so 'heavily polluted with discrimination as to destroy the emotional and psychological stability of the minority [employee].' " *Id.* (quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir.1971) (disapproved of on other grounds in *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 62 (1984)).

Here, where her allegations are taken as true, Numa has stated a hostile environment claim. She alleges that she and her black co-workers were singled out for ridicule, were systematically denied transfers allowed to non-black attorneys, were referred to as "girls," and were categorically subject to non-attorney review while non-black attorneys were not. For these and other reasons, the Court finds these allegations sufficiently severe and pervasive enough to alter the conditions of her employment.

To state a claim for retaliation, a plaintiff must allege facts sufficient to show that (i) she engaged in a protected activity as defined by Title VII; (ii) her employer was aware of that activity; (iii) she suffered a materially adverse employment action; and (iv) there was a causal connection between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551 at 556-57 (5th Cir. 2007). "An employee

15

has engaged in protected activity when [she] has (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372–73 (5th Cir.1998) (quoting 42 U.S.C. § 2000e–3(a)). Additionally, as the Supreme Court recently clarified, the causal requirement for retaliation claims must be proved according to traditional principles for but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).

Here, Numa has satisfied each of these elements and stated a claim for retaliatory discharge. She filed charges with the EEOC and she alleges retaliation in that she was fired because of that action and for otherwise "speaking out against a pattern of discriminatory conduct" (SAC at 10). Such allegations suffice at this stage of litigation.

To establish a prima facie case of disparate treatment in employment, an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259

16

(5th Cir. 2009). An employer's action is "because of" membership in a protected class if "the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2520 (2013).

Here, the DA Defendants contend that Numa fails to state a disparate treatment claim because she only alleges one employment action (termination) and fails to allege that similarly situated persons of a different class were treated differently. As noted above, however, the Court reads the Complaint to assert disparate treatment claims for denial of transfer, for discriminatory performance review, and for discharge. Each, when substantiated with particular proof, may constitute adverse employment actions. *See*, *e.g.*, *Alvarado v. Texas Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) ("denial of a transfer may be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits."); *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (holding that a negative performance review did not qualify as an adverse employment action *per se*, but suggesting that negative reviews with material consequences may qualify.) And, once again, Numa sufficiently alleges causation, that she was qualified, and the similarly situated non-black attorneys did not suffer her fate.

17

In summary, Numa's Title VII claims as asserted against Cannizzaro in his official capacity were timely filed, followed exhaustion of administrative remedies, and sufficiently state a claim upon which relief can be granted. It is therefore **ORDERED** that the DA Defendants' Motion to Dismiss is **DENIED** with respect to Title VII claims.

C. <u>1981 & 1983 Claims</u>

Numa also seeks relief against Cannizzaro, Martin, and Huffman as individuals "under 42 USC §1981 through 42 USC §1983, for violation of her right to be free from discrimination based on race, in accordance with the equal protection clause of the 14th Amendment to the United States Constitution." (Rec. Doc. 50 at 2). The DA Defendants contend that such claims are prescribed, that Numa has failed to state a claim under either statute, and that the individual defendants are entitled to qualified immunity. (Rec. Doc. 53-1 at 4, 14-15, 18-21).

1. **Prescription**

Federal law determines when section 1983 and 1981 claims accrue. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998). State law, however, determines prescriptive periods, and Louisiana law subjects such claims to the one-year prescriptive period set forth in LSA CC Art. 3492. *Elzy v. Roberson*, 868 F.2d 793, 794-95 (5th Cir. 1989); *Taylor v. Bunge Corporation*, 775 F.2d 617, 618 (5th Cir. 1985). For purposes of calculating that prescription

18

period, such causes of action accrue when a plaintiff knows or has reason to know of the injury which forms the basis of her action. *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998). Notably, the filing of EEOC charges does not toll the state prescriptive period governing section 1981 and 1983 claims. *See Taylor* 775 F.2d at 618-19; *Fussell v. Bellsouth Communications, Inc.*, 1998 WL 12229 at 2 (E.D. La. 1998).

However, the continuing violation doctrine, an equitable exception to the one-year period, may apply where the unlawful employment practice manifests itself over time rather than as a series of discrete acts. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989) (quoting *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 532 (5th Cir.1986)). The factors to be considered in determining whether the continuing violation doctrine applies are as follows:

> [t]he first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependant on a

continuing intent to discriminate?

*Waltman*, 875 F.2d at 475 (quoting *Berry v. Board of Supervisors of Louisiana State University*, 715 F.2d 971, 981 (5th Cir.1983).

Here, Numa initiated suit on March 19, 2013. Thus, unless the continuing violation doctrine or some other equitable doctrine tolls or extends the prescription period, all claims that accrued prior to March 19, 2012 are prescribed. The only act described in her complaint that occurred after that date is her March 29, 2012 termination. Her complaint makes clear that she was aware of the harms and acts alleged as they arose. Her various letters to superiors, to outside groups, and to the EEOC itself leave no room for doubt. For similar reasons, and after considering the factors set forth in *Waltman*, the Court finds that no equitable doctrine functions to toll the prescription period. Thus, Numa's section 1981 and 1983 three claims are prescribed except to the extent they seek recovery for her March 19, 2013 termination.

Accordingly, it is **ORDERED** that the DA Defendants' Motion to Dismiss is **GRANTED with respect to Plaintiff's section 1983 claims to the extent they seek recovery for acts preceding her March 19 termination.**

2. **Failure to State a Claim**

The DA Defendants argue that Numa fails to state a claim in several respects. Essentially, they argue that Numa fails to state a claim under the heightened pleading requirements for civil rights

suits against governmental officials in the individual capacities as set forth by *Anderson v. Pasadena Independent School District, 184 F.3d 439, 443* (5th Cir. 1999).[4]

The Fifth Circuit requires that "plaintiffs suing governmental officials in their individual capacities must allege specific conduct giving rise to a constitutional violation." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)(citations omitted). Thus, to survive a motion to dismiss, such actions must be pleaded with factual detail and particularity rather than mere "conclusionary allegations." *Id.* (quotations and citations omitted). Such detail and particularity must be alleged with respect to individual defendants who "were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Id.* Moreover, a "supervisory official may be held liable under § 1983 only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates*

---

[4]The Defendants also contend that Numa's section 1981 claims have not been properly premised on section 1983. While they are correct that 1981 claims must be brought through section 1983, *see Felton v. Polles*, 315 F.3d 470, 481 (5th Cir. 2002) ("independent § 1981 claim—not brought through § 1983—against [his supervisor] in his individual capacity is contrary to *Jett*" (citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 735(1989)), erroneously contend that Numa has failed to do so here. This argument ignores the entire substance of the Numa's Third Amended Complaint, which added the added language stating that her claims are asserted "under 42 USC §1981 through 42 USC §1983, for violation of her right to be free from discrimination based on race, in accordance with the equal protection clause of the 14th Amendment to the United States Constitution." (Rec. Doc. 50 at 2). Such language plainly and sufficiently asserts a claim "under" section 1981 "through" section 1983.

*v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

Here, Numa fails to state a 1983 claim against Cannizzaro but sufficiently states a claim against Huffman and Martin. As to Cannizzaro, Huffman fails to allege his direct participation in discriminatory acts or other acts that caused such harm. The SAC specifically alleges only that he received internal complaints, that he did not override Huffman's denial of transfer, and that he initiated an investigation by Charbonnet & Charbonnet. (SAC at 4-6, 8). All other references to Cannizzaro--that he had knowledge of Huffman's retaliatory motive in firing her, that the other facts alleged "clearly indicate [Cannizzaro's knowledge] of Huffman's discriminatory practices[,]" and that Cannizzaro offered "tacit approval" of such practices--are conclusionary and insufficient to state a claim. She has, in short, failed to allege facts establishing Cannizzaro's affirmative involvement or causal connection with discriminatory acts. Morever, to the extent Numa seeks to hold Cannizzaro accountable under a theory of supervisory liability, she has not alleged that he implemented a policy that causally resulted in discrimination. For these and other reasons **IT IS ORDERED** that the DA Defendants' Motion to Dismiss is **GRANTED with respect to Numa's section 1983 claims asserted against Cannizzaro in his individual capacity.**

In contrast, Numa has alleged with particularity facts

22

supporting her 1983 claims against both Huffman. Huffman is, in short, is the primary actor in the SAC and is directly responsible for the most of alleged disparate treatment, hostility, and other actions described above. **IT IS THEREFORE ORDERED** that the DA Defendants' Motion to Dismiss is **DENIED without prejudice to reurge after completion of discovery to the extent it seeks dismissal of 1983 claims against Huffman for failure to state a claim.**

Similarly, Numa has alleged sufficient facts to state a section 1983 claim against Martin. While he appears as a secondary actor in SAC's complaint, his alleged involvement in "directing" the internal investigation, among other things, is sufficient to state a claim. Accordingly, **IT IS ORDERED** that the DA Defendants Motion to Dismiss is **DENIED without prejudice to reurge after completion of discovery to the extent it seeks dismissal of 1983 claims against Martin for failure to state a claim.**

**3. Qualified Immunity.**

Finally, the DA Defendants argue that the individual defendants are entitled to qualified immunity. This argument, however, is woefully incomplete. In two short paragraphs, the Defendants simply recite the two-prong test put forth in *Saucier v. Katz*, 533 U.S. 194, 202 (2001), address only a portion of Numa's allegations, and summarily conclude that "[q]ualified immunity clearly attaches." (Rec. Doc. 53-1 at 20). That is, the Defendants provide no analysis beyond a bare assertion of qualified immunity.

23

It is not the duty of this Court to provide the Defendants with arguments they fail to make. *See*, *e.g.*, *In re Cao*, 619 F.3d 410, 435 (5th Cir. 2010) ("However, as a court comprised of Article III judges, our role is not to create arguments for adjudication-- but rather, our role is to adjudicate those arguments with which we are presented.") Accordingly, **IT IS ORDERED (i)** that the DA Defendant's Motion to Dismiss is **DENIED without prejudice to reurge** with respect to the 1983 claim against Huffman, and **(ii)** that those Defendants shall file a motion seeking dismissal on qualified immunity grounds with a memorandum providing thorough rather than cursory analysis no later than **April 18th, 2014**.

D. The City's Motion to Dismiss and Alternative Motion for a More Definite Statement

Numa's Complaint also names the City as a Defendant, but fails to assert any actual claims against it. That is, she lists the City as a defendant in the caption of her complaint and again under the "Parties" section of her complaint. In the latter section, wherein plaintiffs typically describe named defendants, the Complaint simply states that "on information and belief, the City of New Orleans insures the District Attorney's office, and its assignees, against claims brought pursuant to Title VII." (SAC at 3). There are no other references to the City--no causes of action are asserted and no facts are alleged in the Complaint's self-styled "Factual Allegations" section. *Id.* at 3-15. In short, Numa neither

24

alleges facts specific to nor asserts legal grounds for relief against the City.  For these and other reasons Numa has failed to state a claim against the City and it is therefore **ORDERED** that the City's Motion to Dismiss (Rec. Doc. 52) is **GRANTED**.

Conclusion

    **IT IS ORDERED** that the DA Defendants' Motion to Dismiss (Rec. Doc. 53) is **GRANTED in part and DENIED in part.** Numa's Section 1983 claims are **(i) DISMISSED as prescribed to the extent they seek recovery for actions prior to Numa's March 19, 2012 termination** and **(ii) DISMISSED for failure to state a claim as to Cannizzaro in his individual capacity.**

    **IT IS FURTHER ORDERED** that the City's Motion to Dismiss (Rec. Doc. 52) is **GRANTED** and Numa's claims against the City are **DISMISSED with prejudice.**

    **IT IS FURTHER ORDERED** that the remaining defendants shall file a motion to dismiss on qualified immunity grounds **and provide thorough rather than cursory analysis** no later than Friday, April 18th, 2014.

    New Orleans, Louisiana, this 26th day of March, 2014.

    UNITED STATES DISTRICT JUDGE